IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED JEWISH COMMUNITIES, INC. trading as United Jewish Appeal,<br><br>   Plaintiff,<br><br>     v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for The Midtown Community Bank,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:10-CV-3357-TWT |
| UNITED JEWISH COMMUNITIES, INC. trading as United Jewish Appeal,<br><br>   Plaintiff,<br><br>     v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION<br>as receiver for The Buckhead Community Bank,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:10-CV-3355-TWT |

<u>ORDER</u>

This is an action for breach of fiduciary duty. It is before the Court on the Federal Deposit Insurance Corporation as receiver for The Buckhead Community Bank's Motion to Dismiss, No. 10-CV-3355 [Doc. 12], and the Federal Deposit

T:\ORDERS\10\United Jewish Communities\10cv3357\mdtwt.wpd

Insurance Corporation as receiver for The Midtown Community Bank's Motion to Dismiss, No. 10-CV-3357 [Doc. 7].  For the reasons set forth below, the Court DENIES the Motion to Dismiss with respect to The Buckhead Community Bank, No. 10-CV-3355 [Doc. 12] and GRANTS the Motion to Dismiss with respect to The Midtown Community Bank, No. 10-CV-3357 [Doc. 7].

## I. Background

On December 1, 2003, Lynn Tuvim applied for a $100,000 certificate of deposit at The Buckhead Community Bank ("BCB"). See No. 10-CV-3355 [Doc. 1, Ex. C]. On October 28, 2005, Ms. Tuvim applied for another $100,000 certificate of deposit at The Midtown Community Bank ("MCB"). See No. 10-CV-3357 [Doc. 1, Ex. C]. During this period, Ms. Tuvim opened several other certificates of deposit and trust accounts with banks in the Atlanta area. On each of these accounts, she listed "United Jewish Appeal" ("UJA") as the payable-on-death ("P.O.D.") beneficiary. The Plaintiff, United Jewish Communities ("UJC") claims that it is the successor to UJA.

On May 1, 2006, Ms. Tuvim passed away. At the time of her death, Ms. Tuvim had been estranged from her two sons, Mark and Reid Tuvim, for the past 20 years. Nevertheless, Ms. Tuvim's sons were appointed administrators of her estate. As administrators, Mark and Reid Tuvim filed a complaint seeking to set aside the

certificates of deposit designating UJA as the P.O.D. beneficiary. The Georgia Supreme Court ultimately held that a corporation such as UJC is not a proper P.O.D. beneficiary. See Tuvim v. United Jewish Cmtys., 285 Ga. 632, 633 (2009) ("Tuvim I"). The court ordered the account proceeds to be paid to Ms. Tuvim's sons.

On October 18, 2010, UJC filed a Complaint against the Federal Deposit Insurance Corporation as receiver for The Midtown Community Bank ("MCB Complaint") No. 10-CV-3357 [Doc. 1]. The same day, UJC filed a related Complaint against the Federal Deposit Insurance Corporation as receiver for The Buckhead Community Bank ("BCB Complaint") No. 10-CV-3355 [Doc. 1]. The Plaintiff contends that the banks owed a duty to UJC as a third-party beneficiary of Ms. Tuvim's beneficiary designations. The Plaintiff further alleges that the banks breached this duty by failing to properly advise Ms. Tuvim as to her beneficiary designations. UJC has also commenced several similar actions against other financial institutions, including lawsuits against Wachovia Bank, N.A. and Branch Banking & Trust. These two actions are currently pending before this Court. See United Jewish Cmtys. v. Wachovia Bank, N.A., No. 10-CV-1289; United Jewish Cmtys. v. Branch Banking & Trust, No. 10-CV-1290. On November 29, 2010, the Court issued an Order granting in part and denying in part Wachovia's and Branch Banking and

Trust's motions to dismiss (the "Prior Order"). See No. 10-CV-1290 [Doc. 10]; No. 10-CV-1289 [Doc. 14].

On January 20, 2011, the FDIC filed Motions to Dismiss the MCB Complaint and the BCB Complaint. See No. 10-CV-3355 [Doc. 12]; No. 10-CV-3357 [Doc. 7]. The FDIC's motions reiterate several arguments addressed in the Prior Order. The FDIC also argues, however, that the Plaintiff's claims are barred by 12 U.S.C. § 1823(e) and the D'Oench doctrine.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v.

Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

### III.  Discussion

#### A.  D'Oench Doctrine

First, the FDIC argues that UJC's claims are barred by the D'Oench doctrine and 12 U.S.C. § 1823(e).  The D'Oench doctrine provides that "[i]n a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records."  Baumann v. Savers Fed. Sav. & Loan Assoc., 934 F.2d 1506, 1515 (11th Cir. 1991).  D'Oench also bars "tort claims arising from oral side agreements."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 594 (11th Cir. 1995).  Finally, "[b]ecause [12 U.S.C.] § 1823(e) is merely a codification of D'Oench and its progeny, defenses premised upon § 1823(e) and D'Oench are usually construed in tandem."  Federal Deposit Ins. Corp. v. McCullough, 911 F.2d 593, 599 n.4 (11th Cir. 1990).

In Baumann, the plaintiff alleged that the defendant bank breached certain oral terms of a loan agreement. The bank had been declared insolvent and the Federal Savings and Loan Insurance Corporation had been appointed as conservator. The court held that the D'Oench doctrine prohibited evidence of oral assurances regarding the loan agreement. The court reasoned that "federal examiners would not have been put on notice that [the bank] did not have the option described in the loan documents, but rather a contractual duty, to alter the interest scheme provided in the documents when Baumann ran into trouble with the city planning board." Baumann, 934 F.2d at 1516.

By contrast, in Bufman Organization v. Federal Deposit Insurance Corp., 82 F.3d 1020 (11th Cir. 1996), the plaintiff alleged that a failed bank violated Florida law by failing to return several checks or give notice of their dishonor. The defendant, as receiver for the failed bank, argued that the D'Oench doctrine barred the plaintiff's claim because the obligation was not properly recorded in the bank's records. The court, however, held that D'Oench did not prevent recovery because the duty "[was] not based on any agreement that [was] not part of the bank's records." Id at 1027. Rather, the court reasoned, the claim was "based on a routine agreement that is part of the bank's records: the contract of deposit that established his checking account." Id. "One of the terms of this contract that [was] implied by Florida law [was] the

obligation of the depository bank, when it is also the payor bank, to take timely action following the presentment of a demand item." Id. at 1028.

Here, as in Bufman, the Plaintiff's claims arise from contracts (the certificates of deposit) with MCB and BCB.  The terms of those contracts are determined by Georgia law. See id. at 1027 (noting that deposit agreement is governed by state law unless terms are varied by agreement). Indeed, as discussed below, Georgia law imposes a duty on banks that issue certificates of deposit.  Unlike Baumann, this duty is not the product of any agreement, oral or otherwise, of which the FDIC would have been unaware when examining the banks' records.  See Baumann, 934 F.2d at 1515 (noting that "party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records."). Rather, the duty is based on Ms. Tuvim's certificates of deposit (specifically the beneficiary designations) and Georgia tort law.  For this reason, the Plaintiff's claims are not barred by the D'Oench doctrine.

B.      Breach of Duty

The Defendant also argues that it did not breach any duty set forth in <u>Tucker Federal Savings & Loan Association v. Rawlins</u>, 209 Ga. App. 649 (1993).[1]  As discussed in the Prior Order, however, <u>Tucker Federal</u> requires banks to use ordinary care when advising their customers on designating a P.O.D. beneficiary.  Here, UJC asserts that MCB and BCB failed to use ordinary care in advising Ms. Tuvim on how to designate a P.O.D. beneficiary.  (<u>See</u> Prior Order, at 13.)  Thus, as discussed in the Prior Order, BCB and MCB owed a duty to the Plaintiff.

C.      Standing

Next, the Defendant argues that UJC has failed to properly allege that it is the successor to UJA.  The caption of both the MCB Complaint and the BCB Complaint reads: "United Jewish Communities, Inc. t/a United Jewish Appeal."  Further, the Complaint begins by stating "Plaintiff, United Jewish Communities, Inc. f/k/a United Jewish Appeal ("UJC")."  No. 10-CV-3355 [Doc. 1]; No. 10-CV-3357 [Doc. 1]. Finally, in paragraph 19 of its Complaint, UJC alleges that "United Jewish Appeal, [is] now known as UJC."  <u>Id.</u>  The Defendant argues that these allegations are nothing

---

[1] The Defendant reiterates several arguments addressed by the Court in the Prior Order.  Although the FDIC acknowledges the Court's Prior Order, the Defendant introduces these arguments for record purposes.  (<u>See</u> BCB's Mot. to Dismiss, at 16 n.4.)

more than legal conclusions. For purposes of a motion to dismiss, however, the Court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Here, the Plaintiff has sufficiently alleged that UJA, the entity listed on Ms. Tuvim's certificates of deposit, it now known as UJC. Although the Defendant will have an opportunity to challenge this assertion, the Court must credit the Plaintiff's allegations at this point.

### D.    Third-Party Beneficiary

The Defendant argues that UJC has not pled facts sufficient to show that it is a third-party beneficiary. As discussed above, however, UJC has properly pled that it is the successor to UJA for the purposes of a motion to dismiss. UJA is listed as the P.O.D. beneficiary on Ms. Tuvim's CD applications. Further, as discussed in the Prior Order, Tucker Federal imposes a duty on financial institutions with respect to third-party beneficiaries. (See Prior Order, at 13.) For these reasons, UJC has standing as a third-party beneficiary.

### E.    O.C.G.A. § 7-1-820

The Defendant claims that O.C.G.A. § 7-1-820 bars the Plaintiff's claim. The statute provides that payment to a payable-on-death beneficiary "discharges the

financial institution from all claims for amounts so paid." O.C.G.A. § 7-1-820. As discussed in the Prior Order, the Plaintiff is seeking damages for breach of duty, not breach of contract. (See Prior Order, at 8.) For this reason, O.C.G.A. § 7-1-820 does not bar UJC's claim.

F.   Exculpatory Language

The Defendant argues that Ms. Tuvim waived her rights to sue for the claims stated here.

1.   MCB

In the MCB Complaint, the Plaintiff attached a certificate of deposit application (the "CD Application") that provides: "[Midtown Community Bank] make[s] no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds." See No. 10-CV-3357, [Doc. 1, Ex. C].[2] As discussed above, and in the Prior Order, Tucker Federal requires banks to provide such advice. The parties, however, are free to modify this obligation through contract. Indeed, parties may waive claims of ordinary negligence in Georgia. Flood v. Young Woman's Christian Ass'n of Brunswick, 398 F.3d 1261, 1264 (11th Cir. 2005). Here, UJC claims that MCB negligently failed to advise Ms. Tuvim as to her beneficiary designation. By signing the certificate of

---

[2]The Defendant refers to the CD Application as Form CD-AA-LAZ.

deposit application, however, Ms. Tuvim waived her right to rely on advice from MCB regarding a P.O.D. designation. Further, UJC relied on the CD Application by attaching it to the MCB Complaint. See White v. Wachovia Bank, N.A., 563 F. Supp. 2d 1358, 1360 n.1 (N.D. Ga. 2008) (considering deposit agreement where plaintiff quoted from agreement and did not dispute its accuracy or authenticity). UJC, as a third-party beneficiary, cannot bring claims that were waived by Ms. Tuvim. For this reason, the Plaintiff's breach of duty claim against MCB is dismissed.

2. BCB

Unlike the MCB Complaint, the CD Application is not attached to the BCB Complaint. Indeed, the language quoted above is found no where on the application attached to the BCB Complaint. As discussed in the Prior Order, the Court will not consider additional documents offered by the Defendant that are not relied on or quoted from by UJC. (See Prior Order, at 6.) For this reason, the Plaintiff's claims against BCB are not dismissed.

G. Attorney's Fees

Finally, the Defendant argues that because UJC's underlying claims fail, the Plaintiff's claim for attorney's fees must also fail. O.C.G.A. § 13-6-11 "does not create an independent cause of action but merely permits in certain limited circumstances the recovery of the expenses of litigation incurred as an additional

element of damages." Lamb v. Salvage Disposal Co. of Ga., 244 Ga. App. 193, 196 (2000).  As discussed above, UJC's claim against MCB has been waived.  Thus, the Plaintiff's claim for attorney's fees against MCB is also dismissed.  UJC's claim for attorney's fees against BCB, however, survives the Defendant's Motion to Dismiss.

IV.  Conclusion

For the reasons set forth above, the Court DENIES the Motion to Dismiss with respect to The Buckhead Community Bank, No. 10-CV-3355 [Doc. 12] and GRANTS the Motion to Dismiss with respect to The Midtown Community Bank, No. 10-CV-3357 [Doc. 7].

SO ORDERED, this 18 day of April, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge